**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PARTICLE DRILLING | § | Case No. 09-33744-H1-11 |
| TECHNOLOGIES, INC., | § | |
| A NEVADA CORPORATION *et al.* | § | Jointly Administered |
| | § | |
| Debtors. | § | |

**DEBTORS' MOTION FOR ORDER:  (A) AUTHORIZING AND APPROVING THE
SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS, CHARGES AND ENCUMBRANCES; AND (B) AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF LEASES AND CONTRACTS UNDER
<u>SECTION 365 OF THE BANKRUPTCY CODE IN CONNECTION WITH SUCH SALE</u>**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 29, 2009, AT 1:30
P.M., BEFORE THE HONORABLE MARVIN ISGUR, IN COURTROOM 404, 4TH FLOOR,
515 RUSK, HOUSTON, TEXAS.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU
OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY
TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU
MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE
AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON
YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.
IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT
FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED
AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY
DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Particle Drilling Technologies, Inc., a Nevada Corporation and Particle Drilling

Technologies, Inc., a Delaware Corporation (collectively "PDTI" or Debtors"), file this (the

"<u>Motion</u>") for entry of an order, substantially in the form of the proposed order attached hereto,

pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-

1330 (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing and approving the sale of certain of the Debtors' assets free and clear of liens, claims, interests, charges and encumbrances; and (b) authorizing assumption and assignment of leases and contracts under section 365 of the Bankruptcy Code in connection with such sale.  In support of this Motion, the Debtors further state as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and rule based predicates for the relief requested herein are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

## BACKGROUND

3.      Debtors Particle Drilling Technologies, Inc., a Nevada Corporation ("PDTI Nev" or "Debtor") and Particle Drilling Technologies, Inc., a Delaware Corporation ("PDTI Del" or "Debtor") filed voluntary petitions under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on May 30, 2009 and June 1, 2009, respectively (collectively the "Petition Date").  PDTI Nev and PDTI Del are collectively referred to hereafter as "Debtors".  The Debtors continues to operate their business and manage their property as a debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' bankruptcy case and no official committee of unsecured creditors has been established yet.

4.      PDTI Nev is a Nevada corporation based in Houston, Texas that is a development stage company operating in the oilfield service and technology industry.  PDTI Nev was organized on June 14, 2002 and was formerly known as MedXLink Corp.  The name was changed to Particle Drilling Technologies, Inc. on January 25, 2005.  PDTI Nev is currently developing an advanced drilling technology to be offered to the energy industry.

5.      PDTI owns 100% of the stock of PDTI Del, which is a non-operating entity.

6.      PDTI Nev was formed to commercialize its patented and patent-pending Particle Impact Drilling ("PID") system which is a mobile system that readily adapts to conventional drilling rigs and is designed to provide a radical increase in penetration rates for drilling oil and gas wells, particularly through deep hard and abrasive zones or other difficult-to-drill formations.

7.      The purpose of the PID system is to improve drilling efficiencies and significantly improve overall economics to the energy industry in regions around the world where slow drilling rates result in high costs to find and develop oil and gas reserves. The PID system utilizes a specially designed "fit for purpose" drill bit fitted with jetting nozzles and polycrystalline diamond compact cutting structures for penetrating hard-rock formations in the exploration of oil and gas. This technology will dramatically improve drilling efficiency in the energy industry; thereby making new energy reserves economically available through a significant reduction in finding and development costs.

8.      PDTI Nev is a publicly traded company whose shares of common stock have been traded on NASDAQ.  However, NASDAQ recently delisted PDTI Nev stock and trading is currently conducted in the Pink Sheets electronic OTC markets.  As of March 31, 2009, the number of outstanding shares of PDTI Nev common stock was 35,740,349.  There are approximately 230 shareholders.

9.      Because PDTI Nev is currently a development stage company, it generates no revenue and its continued existence is dependent upon its successful development of the PID technology and its ability to successfully commercialize this technology. PDTI has yet to generate cash flow from operations, and until revenues commence, PDTI is highly dependent upon debt and equity funding.

10.     Since its inception, PDTI Nev has financed its operations through private sales of equity, a subscription rights offering, the issuance of convertible notes, and the issuance of a PIK note, with net proceeds totaling $37,793,075 through March 31, 2009.

11.     Additionally, as of March 31, 2009, PDTI Nev had assets of $2,884,606 and liabilities of $1,476,092. For the three and six months ended March 31, 2009, PDTI Nev reported net losses of approximately $1.6 million and $3.6 million, respectively, as compared to net losses of approximately $2.3 million and $5.6 million for the three and six months ended March 31, 2008, respectively. PDTI Nev has recently downsized its operations, decreasing its employee base from twenty one (21) to twelve (12) employees.

12.     On June 1, 2009, the Debtors filed a motion for Approval Of Debtor In Possession Financing Agreement And The Granting Of Post Petition Liens And Security Interests Under 11 U.S.C. §364 [Docket No. 7] (the "DIP Motion").

13.     On June 5, 2009, the Court entered interim order approving the DIP Motion and authorizing the Debtors to borrow $1,575,000 from Edward F. Heil ("DIP Loan Facility").  A hearing on the entry of a final order on the DIP Motion is scheduled for June 24, 2009, at 4:00. p.m.

14.     The case has been set on a fast track for confirmation, with the Court establishing abbreviated deadlines pertaining to the disclosure statement and confirmation filings. The Debtor

must file a plan and disclosure statement with the Court no later than June 15, 2009, with a hearing to conditionally approve Debtors' disclosure statement set for June 24, 2009 and confirmation on July 29, 2009.  The Debtors intend to have the hearing on the sale of the Debtors assets as contemplated herein in conjunction with and at the same time as the confirmation hearing.

15.     The Debtors have filed a motion seeking approval of bidding procedures in connection with the proposed sale of substantially all of their assets to PDTI Holdings, LLC (the "Proposed Purchaser"), an entity wholly-owned by Edward F. Heil ("Heil"), in exchange for consideration in the form of (i) a credit bid of the outstanding principal and interest on the secured DIP Loan Facility, and (ii) $200,000 in cash (subject to adjustment as set forth in the Asset Purchase Agreement) (the "Offer").  The Debtors believe that the total value of the offer is approximately $1.3 million to $1.8 million (depending on the amount of funds advanced and outstanding under the DIP Loan Facility at closing).  To enable the credit bid, Heil intends assign his interest in the DIP Loan Facility to the Proposed Purchaser.

## Summary of Relief Requested

16.     By this Motion, the Debtors seek approval for the proposed sale of certain of their assets to the Proposed Purchaser, or to the qualified bidder with the highest or otherwise best bid, at an auction (the "Auction") to be conducted at a date to be determined by this Court.  The Proposed Purchaser is a third party, not comprised of insiders of the Debtors, with no affiliation to the Debtors.

## The Proposed Asset Purchase Agreement

17.     The Debtors and the Proposed Purchaser have negotiated Asset Purchase Agreement, a copy of which (without its exhibits and schedules) is attached hereto as Exhibit A

(the "Asset Purchase Agreement") under which, subject to the Auction contemplated hereby and subject to Court approval, the Proposed Purchaser would purchase substantially all of the assets of the Debtors (the "Assets").[1]

18.     Pursuant to the Asset Purchase Agreement, the Proposed Purchaser has offered to purchase the Assets in exchange for consideration in the form of (i) a credit bid of the outstanding principal and interest on the secured DIP Loan Facility, and (ii) $200,000 in cash (subject to adjustment as set forth in the Asset Purchase Agreement).  The descriptions in this Motion of terms, provisions, conditions and transactions set forth in the Asset Purchase Agreement are qualified in their entirety by the Asset Purchase Agreement and, in the event of any inconsistency between the discussion of the Asset Purchase Agreement contained in this Sale Motion and in the Asset Purchase Agreement itself, the Asset Purchase Agreement governs.

19.     In a separate Sales Procedures Motion, the Debtors have also sought entry of a proposed order (the "Sales Procedures Order") scheduling a date, time and place for a hearing on final approval of this Motion (the "Sale Hearing") and approving the proposed bidding procedures.  The proposed Sales Procedures Order also specifies the procedures for objections to the proposed assumption and assignment of assumed contracts, and approves the notice the Debtors intend to provide of the Auction and of the sale of the Assets.  At the conclusion of the Auction, the Debtors propose to identify the highest or otherwise best offer for the Assets (to the extent such offer is acceptable to Debtors, the "Successful Bid" and the bidder making such bid, the "Successful Bidder") together with, if applicable, a second-highest bid.  The Successful Bidder will be required to comply with the Court approved bidding procedures and to commit to

---

[1]     Capitalized  terms not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

proceed to a closing on contractual terms at least as favorable to the Debtors as those set forth in the Asset Purchase Agreement.  At the Sale Hearing, the Debtors shall report the results of any Auction and seek approval of either the Asset Purchase Agreement with the Proposed Purchaser or the asset purchase agreement proposed by the Successful Bidder.

### Necessity of Section 363 Sale
### and Section 365 Assumption and Assignment

20.     The necessity of the proposed sale and the assumption and assignment of certain leases and contracts pursuant to section 365 stems from the current state of the Debtors' businesses and the prospects for continued operations in the absence of a sale.  The Debtors are distressed enterprises and lack the financial wherewithal to execute a business plan to become profitable.

21.     The Debtors believe that, without such a sale, the Debtors will not be able to maximize value to creditors.  At this critical juncture, the Debtors believe that a sale of the Assets (to the Proposed Purchaser or to the Successful Bidder), on terms consistent with those set forth in the Asset Purchase Agreement, is in the best interests of the Debtors, their employees, their customers, their vendors, their estates and their creditors.  The proposed sale procedures will serve to provide for an orderly Auction and to maximize the value the Debtors will recover on account of the sale.

### Marketing Efforts and the Offer by the Proposed Purchaser

22.     On October 17, 2008, the Board of Directors of PDTI Nev engaged Parks Paton Hoepfl & Brown ("PPH&B") to assist the Board in evaluating strategic alternatives available to the Company which would enable a more rapid commercialization of the Company's technology and in doing so improve credibility and liquidity.

23.     Prior to the engagement of the investment banking firm of PPH&B, the Company's president and CEO made numerous contacts at various levels both within the energy oilfield service sector and through conventional financing institutions and private equity firms. While there was significant interest, the effort did not result in a tangible transaction that met the Company's objectives.  Until recently, PDTI Nev, with the assistance of PPH&B, continued these efforts and resulted the exchange of term sheets with interested parties and in once case a proposed joint working agreement with a major oilfield service provider.  However, the withdrawal of the Company's senior secured credit facility and resultant liquidity crisis made entry in to the working agreement unfeasible.

24.     In total, the Debtors and PPH&B pursued various arraignments with 51 different companies.  The vast majority of these companies declined any interest and the balance went silent or did not return calls.

## Bidding Procedures

25.     The Debtors seek approval of the Asset Purchase Agreement with the Proposed Purchaser or such agreements as may be reached with the Successful Bidder.  The Debtors shall only seek Court approval of bids that complied, in all respects, with the Court approved Bidding Procedures.

<u>**Applicable Authority For Sale Of Assets**</u>
<u>**Under Section 363(b) of the Bankruptcy Code**</u>

26.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

27.     A sale of the Assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). *See e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991).  In determining whether a proffered business justification is sufficient, a court should consider:

> should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from

> the disposition vis-a-vis any appraisals of the property, which of
> the alternatives of use, sale or lease the proposal envisions and,
> most importantly perhaps, whether the asset is increasing or
> decreasing in value. This list is not intended to be exclusive, but
> merely to provide guidance to the bankruptcy judge.

*Continental Air Lines*, 780 F.2d at 1226 (quoting *Lionel Corp.*, 722 F.2d at 1071).

28.     "Once a court is satisfied that there is a sound business reason or an emergency

justifying the pre-confirmation sale, the court must also determine that the trustee has provided

the interested parties with adequate and reasonable notice, that the sale price is fair and

reasonable and that the proposed purchaser is proceeding in good faith."  Del. & Hudson

Railway, 124 B.R. at 176.

29.     The Debtors have proposed the sale of the Assets after thorough consideration of

all viable alternatives, and have concluded that the sale is supported by a number of sound

business reasons.  Accordingly, given the distressed financial condition of the Debtors, a sale of

the Assets is appropriate under section 363(b) of the Bankruptcy Code, as the courts in this

Circuit and elsewhere have applied it.  *See e.g.*, *Tempo Technology*, 202 B.R. at 369-70

(approving a sale of all of the debtor's assets, within a month after the petition date, where the

debtor faced a cash shortfall, operated in an industry where there were few potential proposed

purchasers, and anticipated continuing losses and a decline in value of the bankruptcy estates);

*Del.& Hudson Railway*, 124 B.R. at 177 (affirming the bankruptcy court's approval of a sale of

substantially all of the debtor's assets where the debtor would have been "in liquidation mode if

required to delay a sale until after filing a disclosure statement and obtaining approval for a

reorganization plan"); *Titusville Country Club*, 128 B.R. at 400 (granting an expedited hearing

on a motion to approve a sale as a result of "deterioration" of the debtor's assets); *Coastal Indus.,*

*Inc. v. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 366-69 (Bankr. N.D.

Ohio 1986) (approving an expedited sale pursuant to section 363(b) of the Bankruptcy Code just five weeks after the petition date where the debtor was suffering operating losses).  All of the factors discussed in the cases cited above apply to the Debtors and the Assets.

30.    As discussed in detail above, the Debtors have concluded that a sale of the Assets represents the best manner in which to maximize value to creditors of the Debtors' chapter 11 estates.  Preservation of value for the benefit of all constituencies is a compelling circumstance, and maximization of asset value for the benefit of all creditors is a sound business purpose, warranting authorization of the proposed sale of the Assets.  There is more than adequate business justification to sell the Assets to the Proposed Purchaser or to the Successful Bidder(s).

31.    As a result of the extensive marketing efforts conducted pre-petition, the Debtors believe that the offer for the Assets received by the Proposed Purchaser is fair and reasonable, and provides maximum value to the Debtors' estates.

32.    The Debtors believe that their efforts have yielded in the Asset Purchase Agreement the maximum value for the Assets.  As further assurance of such value, however, the Offer of the Proposed Purchaser will be tested through a public Auction consistent with the requirements of the Bankruptcy Code and Court approved Bidding Procedures.  Upon the conclusion of that Auction, the Debtors, the Court, and all parties in interest can be assured that the Assets will be sold for fair market value.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtors from either the Proposed Purchaser or the Successful Bidder ultimately will be demonstrated by "market exposure" and an Auction process – the best means for establishing whether a fair and reasonable price is being paid.

33.    In addition to a fair and reasonable value offered by the Proposed Purchaser, the proposed sale also is the product of arms-length, good faith negotiations, in which the Debtors

bargained for the maximum possible purchase price for the Assets.  The negotiations involved substantial time and energy by the parties and their professionals, and the Asset Purchase Agreement reflects give-and-take and compromises by both sides.  Under the circumstances, the Debtors submit that the proposed sale is the result of good faith, arms-length negotiations and that the Proposed Purchaser, or the Successful Bidder, should be entitled to all of the protections of section 363(m) of the Bankruptcy Code, which is further addressed below.

### The Asset Sale Satisfies The Requirements Of Section 363(f) of the Bankruptcy Code For A Sale Free And Clear of Liens, Claims, and Interests

34.      Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)  such entity consents;
>
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)  such interest is in a bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35.      Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and clear of all liens, claims, rights, interests, equitable servitudes, and encumbrances as provided in the Asset Purchase Agreement (collectively, the "Interests"), except with respect to such Interests as are assumed pursuant to the Asset Purchase Agreement. *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).  The

Debtors submit that each Interest that is not assumed pursuant to the Asset Purchase Agreement satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto.  The Debtors accordingly request that the Assets be transferred to the Proposed Purchaser, or to the Successful Bidder(s), free and clear of all Interests (except for the Interests that are assumed liabilities), with such Interests to attach to the proceeds of the sale.

36.    The Debtors have reviewed UCC searches of purported lienholders of the Debtors' assets.  The Debtors will send to all known purported lienholders both the Notice of Sale of Assets and Auction (as defined in the Sales Procedures Motion) and notice of this Sale Motion (with the Sale Motion and its exhibits).

**The Sale of Assets Is Free of Any Successor Liability To Proposed Purchaser**

37.    The Proposed Purchaser or the Successful Bidder(s) should not be liable for any of the Debtors' liabilities (other than assumed liabilities), as a successor to the Debtors' business or otherwise (the "Excluded Liabilities").   Extensive case law exists providing that claims against debtors are directed to the proceeds of a free and clear sale of property and may not subsequently be asserted against a buyer.

38.    Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear any interests."   The term "any interest," as used in section 363(f) of the Bankruptcy Code, is not defined anywhere in the Bankruptcy Code. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003); *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).  In *Qualitech*, the Seventh Circuit construed the term "any

interest" very broadly.   327 F.3d at 545.   In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest."   209 F.3d at 258.   The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property."   *Id*. at 258, citing *3 Collier on Bankruptcy* ¶ 363.06[1].   As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests.   Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute."   *Folger Adam*, 209 F.3d at 258.

39.     Courts have consistently held that a proposed purchaser of a debtor's assets pursuant to a section 363 sale takes free from successor liability resulting from pre-existing claims.   *See Ninth Avenue Remedial Group*, 195 B.R. 716l, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *In re Johns-Manville Corp.*, 837 F.2d 89 (2d Cir.), (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re New England Fish Co.*, 19 B.R. 323 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); *In re Hoffman*, 53 B.R. 874 (Bankr. D.R.I. 1985), *aff'd*, 65 B.R. 985 (D.R.I. 1986) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); *In re All Am. Of Ashburn, Inc.*, 56 B.R. 186 (Bankr. N.D. Ga.), *appeal decided by* 805 F.2d 1515 (11th Cir. 1986) (product liability claims precluded on successor doctrine in a sale of assets free and clear); *In re*

*WBQ Partnership*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (State's right to recapture depreciation is an interest as used in section 363(f) of the Bankruptcy Code).

40.     For obvious reasons, the very purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the proposed purchaser arising from the debtor's pre-sale conduct.  Under section 363(f) of the Bankruptcy Code, the Proposed Purchaser or the Successful Bidder are entitled to know that the Assets are not infected with latent claims that will be asserted against the Proposed Purchaser or the Successful Bidder(s) after the proposed transaction is completed.

41.     Existing case law authorizes the issuance of injunctions under these circumstances:

> Courts have long recognized that inherent within the authority to sell property free and clear of liens is the power to enjoin such creditors from pursuing the purchaser of such property. Nevertheless, more explicit protection is often needed to effectuate this important aspect of a § 363 sale.  In other words, an actual injunction barring creditors from suing a proposed purchaser of estate assets is sometimes necessary and appropriate to give the "free and clear" aspect of § 363(f) meaning.  When this is the case, a court has the power to "issue an [] order . . . necessary or appropriate to carry out [§ 363(f), one of] the provisions of the [Bankruptcy Code].

*In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) (citing 11 U.S.C. § 105(a)); *Whitehead & Kales Co. v. Dempster (In re Wiltse Bros. Corp.)*, 361 F.2d 295, 299 (6th Cir. 1966).  Also, while the bankruptcy courts generally recognize that:

> § 105(a) neither creates substantive rights nor permits the courts to contravene the Bankruptcy Code," it is equally clear that under certain circumstances "a permanent injunction is necessary to 'carry out' the effect of the 'free-and-clear' language [contained in a § 363 sale order].

*W.B.Q. Partnership*, 189 B.R. at 110.  *See also In re P.K.R. Convalescent Centers*, 189 B.R. 90 (Bankr. E.D. Va. 1995)(the bankruptcy court enjoined a creditor from suing the proposed purchaser prior to the approval of the sale); *In re Paris Industries Corp.*, 132 B.R. 504 (D. Me. 1991) (enjoining creditors from filing suit against proposed purchaser where claim against predecessor in bankruptcy court was possible and free and clear sale enabled bankruptcy court to enjoin product liability claims as asserted against proposed purchaser).

42.      In this matter, the Proposed Purchaser, and likely any Successful Bidder, will be understandably unwilling to purchase assets from the Debtors, supposedly free and clear of claims, liens, rights, interests and encumbrances, only to be forced to repeatedly re-litigate the issue with the individual claimants after the sale is completed.   Accordingly, any potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of their claims and any competing allegations should be resolved in the context of this chapter 11 case.

43.      This motion is being coordinated and is part of the Debtors' join plan of liquidation, and as such the sale contemplated herein does not constitute an improper sub rosa plan.

## Authorization Of Assumption And Assignment Of Assumed Contracts and Assumed Liabilities

44.      As required by the Asset Purchase Agreement, the Debtors request approval, under 11 U.S.C. § 365, of the assumption and assignment of the Assumed Contracts to the Proposed Purchaser or, alternatively, to the Successful Bidder, and the assumption of the Assumed Liabilities by the Proposed Purchaser or the Successful Bidder.   The Debtors further request that the order approving such sale provide that the Assumed Contracts and Assumed

Liabilities will be transferred to, and remain in full force and effect for the benefit of or against, as applicable, the Proposed Purchaser (or other Successful Bidder) notwithstanding any provisions in the Assumed Contracts or Assumed Liabilities, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.  In the event the Successful Bidder is not the Proposed Purchaser, the Assumed Contracts and Assumed Liabilities for such other Successful Bidder will be identified in schedules to the asset purchase agreement that will be provided at or before the closing of the sale and such Successful Bidder will pay any cure costs.  The Debtors believe that all of the contracts and licenses that could become Assumed Contracts are identified on an <u>Exhibit B</u> which the Debtors will file prior to the hearing on the Sales Procedures Motion.

45.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if –

(A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).  Under section 365(a) of the Bankruptcy Code, a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

(b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

46.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision.  *See e.g.*, *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *Matter of Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977).  A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors.  *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986).  The assumption and assignment of the Assumed Contracts and the assumption of the Assumed Liabilities set forth in the Asset Purchase Agreement is a necessary part of the deal that the Debtors have struck with the Proposed Purchaser.

47.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989).  *See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).

The Proposed Purchaser and all Qualified Bidders will be providing one or more commitment letters to the Debtors showing they are sufficiently capitalized to perform their obligations under the Asset Purchase Agreement and under the Assumed Contracts and Assumed Liabilities, and they will be prepared, if required, to provide evidence to that effect at the Sale Hearing. Consequently, assumption and assignment of the Assumed Contracts and assumption of the Assumed Liabilities is appropriate under the circumstances.

48.     If the Court approves, then pursuant to the Sales Procedures Order requested contemporaneously herewith, the Debtors intend to send a notice (the "Cure Notice"), to each counterparty to an executory contract or unexpired lease with the Debtors intended to be assumed and assigned informing such counterparty that such executory contract or unexpired lease *may* be assumed by the Debtors and assigned to a prospective purchaser at the Sale Hearing. The Cure Notice shall identify the amounts, if any, that the Debtors believe they owe to such contract or lease counterparty to cure defaults under each respective executory contract and unexpired lease (the "Cure Amounts"). The Debtors request that, unless a contract counterparty objects, in writing, at the time of the sale closing (or promptly thereafter): (i) the counterparty will receive from the purchaser, the Cure Amounts as set forth in the Cure Notice, or any Supplemental Cure Notice, as defined in the Sales Procedures Order (assuming that the executory contract or unexpired lease is assumed and assigned); (ii) the Debtors shall be relieved of all liability accruing or arising at any time under Assumed Contracts or Assumed Liabilities; and (iii) the purchaser's promise to perform under such contract or lease will constitute adequate assurance of future performance under such contract or lease.

## Good Faith Under Section 363(m) of the Bankruptcy Code

49.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Third Circuit

in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a Proposed Purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Proposed Purchaser's good faith status at a judicial sale involves fraud, collusion between the Proposed Purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). The Asset Purchase Agreement is an intensely-negotiated,

arm's-length transaction, in which the Proposed Purchaser has, at all times, acted in good faith

under the *Abbotts Dairy* standards. The Debtors thus request that the Court make a finding that

the Proposed Purchaser (or the Successful Bidder) has purchased the Assets, and has taken by

assignment the Assumed Contracts and Assumed Liabilities, in good faith within the meaning of

section 363(m) of the Bankruptcy Code.

### The Form, Manner and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances

50.     Immediately following entry of the Sales Procedures Order, the Debtors will

distribute a Notice of Sale of Assets and Auction, a copy of which is attached to the Sales

Procedures Motion as Exhibit B (the "Auction Notice"), to: (a) Full & Master Service Lists. In

addition, the Debtors will distribute the Cure Notice to all counterparties to executory contracts

and unexpired leases proposed to be assumed and assigned. If required by the Court, an

abbreviated form of the Auction Notice will be published and will be served on all creditors.

51.     The Debtors will have served this Sale Motion (with the Asset Purchase Agreement), at least 21 days prior to the Sale Hearing on: (a) the United States Trustee; (b) Full & Master Service Lists; (i) the Proposed Purchaser; and (j) all entities who have expressed an interest in acquiring the Assets.

52.     In addition, if required, the Debtors will have published an abbreviated version of the Auction Notice, including information regarding the proposed sale in the [applicable publication].

53.     The notice of the proposed sale given by the Debtors sufficiently describes the terms and conditions of the proposed sale.  *See Delaware & Hudson Railway*, 124 B.R. at 180 (Bankr. D. Del. 1991) (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648 (S.D.N.Y. 1995).

54.     Several sections of the Bankruptcy Code dictate the sufficiency of notice and adequacy of service.  As discussed below, the content and manner of service of this Sale Motion and the related notices satisfies all such requirements.

55.     Section 363 Notice.  Section 363 of the Bankruptcy Code provides that a trustee may sell property "after notice and hearing."  Under section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A).  As set forth above, creditors have been provided notice of the salient details regarding this Sale Motion and the Sale Hearing.  Accordingly, notice is sufficient under section 363 of the Bankruptcy Code.

56.     <u>Bankruptcy Rule 2002</u>.  Rule 2002 requires twenty days' notice of proposed sales of property other than in the ordinary course of business.  In addition, Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  Fed. R. Bankr. P. 2002.  As set forth above, the Notice of Sale of Assets and Auction, and the abbreviated Auction Notice, if required, satisfies each of these requirements.

57.     <u>Bankruptcy Rules 6004 and 6006</u>.  Rule 6004 requires that notices of sales of property out of the ordinary course of business comply with Rule 2002.  As set forth above, the Debtors have complied with Rule 2002.  Rule 6006 requires notice of a motion to assume or assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as this Court may direct.  The Cure Notice and this Sale Motion have been or will be served on counterparties to the Assumed Contracts and Assumed Liabilities; thus, satisfying these requirements.

58.     <u>Procedural Due Process</u>.  The notice of this Sale Motion that is being provided is "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Parties in interest have been and should be found to have been afforded adequate notice of this Sale Motion.

59.     The Debtors submit that the notice they have provided and intend to provide both of the proposed sale and of this Sale Motion is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

**Conclusion**

60.     The Debtors' proposed sale of the Assets as described in this Sale Motion and the transfer of the Assumed Contracts and Assumed Liabilities is proper, necessary and serves the best interests of the Debtors, their estates, employees, customers, vendors and creditors.  The relief requested in this Sale Motion will maximize recoveries for all creditors of the estates.  The Debtors thus request the Court to approve the sale as requested.

WHEREFORE, the Debtors respectfully request that the Court enter an order in substantially the form attached hereto: (i) authorizing and approving the sale of substantially all of the Debtors' assets free and clear of liens, claims, interests, charges and encumbrances; and (ii) authorizing assumption and assignment of leases and contracts under Section 365 of the Bankruptcy Code in connection with such sale; and (iii) granting such other and further relief as is just and proper.

Dated:  June 15, 2009

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.


By:___*/s/ Melissa A. Haselden*_____
               EDWARD L. ROTHBERG
               State Bar No. 17313990
               MELISSA A. HASELSEN
               State Bar No. 00794778
               1400 Summit Tower
               Eleven Greenway Plaza
               Houston, Texas 77046
               Telephone:  (713) 961-9045
               Facsimile:  (713) 961-5341

               PROPOSED ATTORNEY FOR DEBTORS