

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/30/2009

| | |
|---|---|
| IN RE: § | Case No. 09-33744 |
| PARTICLE DRILLING TECHNOLOGIES, § | Chapter 11 |
| INC.; fdba MEDXLINK CORPORATION; § | |
| fdba PDT HOLDINGS, INC.; fdba § | |
| PARTICLE DRILLING, INC.; fdba § | |
| PRODRIL ACQUISITION CORP. § | |
| and § | |
| PARTICLE DRILLING TECHNOLOGIES § | |
| INC; fdba PRODRIL ACQUISITION § | |
| COMPANY, INC; fdba PARTICLE § | |
| DRILLING, INC; fdba PDTI § | |
| ACQUISITION CORPORATION, § | |
| § | |
| PARTICLE DRILLING TECHNOLOGIES § | CASE NO: 09-33830 |
| INC § | |
| § | Jointly Administered Order |
| Debtor(s). § | Judge Isgur |

## Memorandum Opinion

### Summary

In January of 2004, debtor Particle Drilling Technologies, Inc. executed Royalty Agreements with PSI Distribution, Inc. and Prodril Services International, Ltd ("PSI"). Pursuant to the Royalty Agreements, PSI transferred rights to various patents to Particle Drilling and Particle Drilling granted PSI royalty rights. The Royalty Agreements provided that any future transfer of the patents would be subject to PSI's royalty rights.

Despite this contractual provision, Particle Drilling seeks to sell the patents free and clear of PSI's royalty rights. PSI did not obtain a lien securing the royalty rights. Nevertheless, PSI contends that a lien is not necessary because its royalty rights are covenants that run with the patents. The Federal Patent Act provides that patents are personal property, while the concept of a "covenant" running with property applies only to real property. Because the patents are

1

personal property, the Court holds that the covenants do not bar a free and clear sale. PSI's remedy is limited to contract damages for breach of the Royalty Agreements.

## Background

On May 30, 2009, Particle Drilling filed a voluntary chapter 11 bankruptcy petition. Particle Drilling develops drilling technologies for commercial use in the oil and gas industry. Particle Drilling claims its technology will allow for vastly greater drilling efficiencies. Particle Drilling is not and has never been profitable. Since its inception, Particle Drilling has relied on debt and equity financing. After a major oil company canceled a drilling project with Particle Drilling, investors ceased financing operations, prompting the bankruptcy petition.

On June 15, 2009, Particle Drilling filed a motion to sell substantially all of its assets free and clear of any interests in the property pursuant to § 363 of the Bankruptcy Code. The proposed sale, if approved, will occur pursuant to a plan of reorganization. PSI timely objected to the sale, contending that Particle Drilling's patents could not be sold free and clear of PSI's royalty rights.[1] On July 7 and July 14, 2009, the Court held hearings on the sale motion. The Court also requested additional briefing on the nature of PSI's interests in the patents. At the conclusion of the July 14 hearing, the Court orally announced its findings and denied PSIs objections. The Court issues this Memorandum Opinion in support of the Court's oral rulings.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1408. This is a core proceeding under § 157(b)(2).

---

[1] PSI objected to a debtor-in-possession financing agreement to the extent that the agreement subjected PSI's royalty rights to liens granted the DIP financer. Similar objections were made to Particle Drilling's proposed disclosure statement and bid procedures. All objections are based on the contention that PSI's royalty rights cannot be subject to the rights of present or future creditors. Accordingly, the Court's holding regarding PSI's objections to the sale motion applies equally to PSI's objections to the DIP financing agreement, disclosure statement, and bid procedures.

**Analysis**

PSI contends that Particle Drilling cannot sell the patents free and clear of PSI's royalty rights. PSI contends that its royalty rights constitute a covenant or equitable servitude that cannot be divested from the patents. PSI also contends that the Royalty Agreements constitute an executory contract and that upon rejection, the royalty rights revert back to PSI. The Court rejects both arguments.[2]

**1. Section 363**

Section 363(b) & (f) allow a debtor-in-possession to sell all the debtor's assets free and clear of any interest in the property under certain conditions.[3] The only issues before this Court are whether the sale is a reasonable exercise of business judgment and whether the patents can be sold free and clear of PSI's royalty rights. "[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). When evaluating whether the debtor-in-possession's proposed sale is consistent with a reasonable business justification, courts "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." *Id.* (citing *In re Lionel Corp.*, 722 F.3d 1063, 1071 (2d Cir. 1983)).

---

[2] PSI initially argued that it held a lien on the patents. PSI failed to produce documentation evidencing its alleged lien or a statutory provision that provided for automatic perfection of a lien. During the July 14 hearing, PSI no longer urged its lien-based arguments. The Court denies PSI's objection to the sale based on alleged lien rights.

[3] Section 363(f) provides: "The trustee may sell property under subsections (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—(1) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

The Court finds that terms of the proposed sale are consistent with a reasonable "business judgment." The sale proposes to sell Particle Drilling's assets to an entity owned by Edward F. Heil ("Heil"). Heil will pay Particle Drilling $1,800,000.00. Approximately $1,600,000.00 of the consideration will be in the form of a credit bid based on debtor-in-possession financing provided by Heil and previously approved by this Court. The remaining $200,000.000 will be paid in cash. The sale also proposes bid procedures and an auction to solicit alternative offers. The Heil offer is reasonable and the bidding procedures provide third parties the opportunity to submit a higher bid.

The proposed sale, though not ideal, offers the best possible return to creditors. James Terry, Particle Drilling's President and CEO, and David Eliff, interim CFO, testified as to Particle Drilling's efforts to solicit financing. Despite working with an investment bank and soliciting approximately 50 different investors, Particle Drilling was unable to obtain an offer other than Heil's. Mr. Eliff also testified that 30 days from the July 14, 2009 hearing would be sufficient time for interested entities to undertake the due diligence necessary to submit a bid. Mr. Terry testified that Particle Drilling will cease operations if the sale is not approved.

The Court makes no final rulings on the proposed sale. Particle Drilling's chapter 11 plan incorporates the proposed sale and the Court has yet to hold a final hearing on the plan. The Court only finds that the proposed sale procedures are proper.

The only real issue presented is whether Particle Drilling can sell its patents free and clear of royalty rights.

### 2. Patents are Personal Property

PSI characterizes its rights as covenants similar to covenants that run with the land. Property subject to a covenant that runs with the land cannot be sold free of the covenant. The

Court rejects PSI's argument. Patents are personal property. Real property concepts (such as covenants running with the land) do not apply to personal property.

The 1952 Patent Act provides that "patents shall have the attributes of personal property." 35 U.S.C. § 261; *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1268 (Fed. Cir. 1991) ("The Patent Act of 1952, resolving conflicting precedent, provided that 'patents shall have the attributes of personal property.'"). The property doctrine of "covenants running with the land" applies only to real property. *Jones v. Cooper*, 938 S.W.2d 118, 123 (Tex. App.—Houston [14th Dist] 1996, writ denied). Accordingly, a royalty interest in a patent cannot be considered a covenant that runs with the land. *Id*. ("Since a patent is to be treated as personal property, there can be no covenants that 'run with' the patent."). "While equity may recognize covenants that do not run with the land, those covenants still must relate to or concern land or its use and enjoyment." *Id*. Accordingly, a royalty interest in a patent "is consideration for the sale of the patent and subject to the law of contracts." *Id*. at 124.

PSI cites no authorities that support its contention that PSI's royalty rights attach to the patents in a manner that subjects future transferees to its rights. The authorities cited by PSI all pre-date the 1952 Patent Act. None conflict with the 1997 *Jones v. Cooper* opinion. The *Jones* case is directly on point. In *Jones*, Jones sold patents to Koomey in return for royalty rights. *Id*. at 120. The agreement also provided that the royalty rights would bind all successors or assignees. *Id*. The patents were subsequently transferred to Cooper and Jones attempted to enforce his royalty rights against Cooper. *Id*. The Fourteenth Court of Appeals rejected the same arguments raised by PSI. *Id*. at 122–26. The Court reasoned that Jones could not enforce its royalty rights on Cooper based on doctrines that apply to real property because patents are personal property. *Id*.

5

Absent a lien, PSI's royalty rights cannot be imposed on a third-party transferee. The provision in the agreements providing that future assignees of the patents would be subject to the royalty rights is insufficient to burden the transferee without a properly recorded lien.

The Court has carefully analyzed the agreements between Particle Drilling and PSI. In effect, the agreements seek to enforce PSI's rights to payment of its royalties by encumbering the patent with an unrecorded lien. The unrecorded lien places an anti-transfer burden on the patents for the purpose of assuring payment of the future stream of royalty payments. Under the Uniform Commercial Code, as adopted in the Texas Business and Commercial Code, such security agreements operating as a restraint must be recorded to give notice to the world before a lien right arises. A "transaction, *regardless of its form*, that creates a security interest in personal property or fixtures" must be filed with the secretary of state to perfect the security interest, unless an exception applies. TEX. BUS. & COM. CODE ANN. §§ 9.109(a)(1) & 9.310(a) (Vernon 2008) (emphasis added).[4]

PSI failed to produce documentation evidencing perfection of its lien pursuant to article 9 or a statutory provision that provided for automatic perfection of its lien. During the July 14 hearing, PSI no longer urged its lien-based arguments. Absent a perfected lien, Particle Drilling can sell the patents free and clear of PSI's royalty rights. As the *Jones* Court holds, patents are personal property and lack any special attributes that would provide an exception to the normal rules governing transfers and liens.

---

[4] Section 9.109(a)(1) provides: "Except as otherwise provided in Subsections (c), (d), and (e), this chapter applies to—(1) a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." TEX. BUS. & COM. CODE ANN. § 9.109(a)(1) (Vernon 2008).

Section 9.310(a) provides: "Except as otherwise provided in Subsection (b) and Section 9.312(b), a financing statement must be filed to perfect all security interests and agricultural liens." TEX. BUS. & COM. CODE ANN. § 9.310(a) (Vernon 2008).

PSI is not without a remedy. However, PSI's remedy is limited to damages for breach of contract. PSI can file a proof of claim in the Particle Drilling bankruptcy estate for damages and the Court will determine the amount of damages.

### 3. Executory Contracts

PSI also contends that the Royalty Agreements are executory contracts. PSI contends that the contracts must be assumed by full performance or the royalty rights revert back to PSI. The Court rejects PSI's contention.

Section 365(a) authorizes debtors to assume or reject executory contracts. 11 U.S.C. § 365(a).[5] The "Countryman" definition of an executory contract, adopted by most courts, defines an executory contract as: "a bilateral agreement under which the obligation of both the bankrupt and the other contracting party remain so far unperformed that failure of either to make complete performance would constitute 'material' breach excusing performance of the other." *In re Dixon*, 990 F.2d 626 n.3 (5th Cir. 1993) (citing Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973)); *In re Gen. Homes Corp.*, 199 B.R. 148 (S.D. Tex. 1996). "A contract where the only thing left to do is payment of money is not an executory contract." *In re Choate*, 184 B.R. 270, 273 (Bankr. N.D. Tex. 1995) (citing *In re Placid Oil Co.*, 72 B.R. 135 (Bankr. N.D. Tex. 1987)); *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985) ("It is true that a contract is not executory as to a party simply because the party is obligated to make payments of money to the other party.").

PSI failed to produce any evidence of significant obligations Particle Drilling owed to PSI other than payment of royalties. It is true that Particle Drilling has obligations that arise

---

[5] Section 365(a) provides: "Except as provided in sections 765 and 766 of this title and in subsection (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

7

from the unrecorded lien, but those obligations are debtor-creditor obligations and not of the type contained in an executory contract. Nor does it appear that PSI owes any continuing obligations to Particle Drilling, other than those related to the payment of money. Accordingly, the Court finds that the Royalty Agreements are not executory with respect to PSI. This is merely a case of Particle Drilling breaching its contract. The breach of contract will give rise to a damages claim.

### 4. Licenses

The Curlett Family Limited Partnership, LTD also filed an objection to the sale motion. Curlett alleges that it has an exclusive license to use the technology represented by the patents and produced an exclusive licensing agreement supporting its position. Curlett alleges that § 365(n)(4) prohibits Particle Drilling from selling the patents free and clear of Curlett's exclusive license.[6] At the July 14 hearing, Particle Drilling did not contest Curlett's exclusive license claim and agreed that any sale would be subject to Curlett's license. Accordingly, the Court sustains Curlett's objection. Particle Drilling's sale must be subject to the Curlett license.

### Conclusion

For the reasons set forth above, the Court denies PSI's objections to Particle Drilling's sale motion, motion for final order on DIP financing, disclosure statement, and bid procedures. Pursuant to § 363, Particle Drilling can sell its patents free and clear of PSI's rights. The Court sustains Curlett's objections. The sale must be subject to Curlett's exclusive license.

SIGNED **July 29, 2009.**

MARVIN ISGUR
United States Bankruptcy Judge

---

[6] Section 365(n)(4)(B) provides: "Unless and until the trustee rejects such contract, on the written request of the licensee the trustee shall—not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity." 11 U.S.C. § 365(n)(4)(B).

8