IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:
PARTICLE DRILLING                              Case No. 09 33744-H1-11
TECHNOLOGIES INC., A NEVADA                    Jointly Administered
CORPORATION, et al.

     Debtors

OBJECTION BY PSI DISTRIBUTION INCORPORATED, PRODRIL SERVICES
INTERNATIONAL LIMITED, AND GUARDIAN LLC DEFINED BENEFIT PLAN AND
TRUST TO CONFIRMATION OF PLAN OF REORGANIZATION

Come now PSI DISTRIBUTION INCORPORATED (PSI), PRODRIL SERVICES

INTERNATIONAL LIMITED (PSIL), and GUARDIAN LLC DEFINED BENEFIT PLAN AND

TRUST (Guardian) and file this their Objection to the Confirmation of Debtor's Plan of

Reorganization and would state to the Court the following:

     1.     PSI Distribution Incorporated (PSI) and ProDril Services International Limited (PSIL)

are creditors in this case holding estimated claims (Royalty Interests) of $200,000,000 and

$100,000,000 respectively.

     2.     Guardian LLC Defined Benefit Plan and Trust is a stockholder in the Debtor holding

50,000 shares of stock.

     3.     PSI and PSIL are part of a family of entities that invented this patented technology

and invested approximately $20,000,000 developing the technology over 12 years prior to assigning

it to the Debtor in exchange for Royalty Rights and an Exclusive Licensing Agreement. Objectors

would state that the patents owned by the Debtor are extremely valuable and by using reasonable

- 1 -

diligence a sale or joint venture could be arranged that would allow the debtor to pay creditors in full and generate significant returns to Debtor's stockholders.

4.       PSI and PSIL and the individual inventor have vast knowledge regarding this technology, yet during the years Debtor's stockholders have invested approximately $37,000,000 in this company, the Debtor has not sought assistance from these individuals and entities in its effort to commercialize it.

5.       Debtor has stated to the Court that it has made great efforts to find a buyer or joint venture partner to protect the interests of the creditors and other interest holders but Debtor made no effort to contact or solicit in good faith a sale or joint venture with PSI and PSIL, the two entities with the most intimate knowledge of the technology and the entities most likely to be able to salvage the technology for the benefit of the creditors and Debtor's stockholders. In fact, even though the Royalties to be paid to these two entities under their Royalty Agreements amount to an estimated 50% of the Revenue to be generated by the Debtor, the Debtor failed to give these entities notice of the Bankruptcy proceeding and made no mention of them in their initial Disclosure Statements.

6.       Debtor and its insiders appear to have a design to get the patents in the hands of a friendly buyer who will rehire Debtor's management to complete the commercialization of the technology to the windfall benefit of the friendly buyer and the Debtor insiders. The $37,000,000 invested by Debtor's trusting shareholders will be for naught as will the $20,000,000 invested by the Objectors and the credit extended the Debtor by its creditors. Objectors would state that during the laboratory and field tests of this technology the publicly traded shares of the Debtor have traded as high as Seven Dollars per share for a market capitalization of over Two Hundred Million Dollars. In

- 2 -

the fall of 2008 the shares sold publicly for Three Dollars per share for a market capitalization of in excess of One Hundred Million Dollars. The technology is closer to being perfected today than it ever has been and thus more valuable than at any time in the past. The proposed friendly buyer, with the assistance of Debtor's insiders, intends to continue its joint venture relationship with Shell Oil Company and drill the field test well that was postponed a few months ago.

7.      Debtor has stated in its pleadings filed herein that the key employees of the Debtor will continue to work for the new buyer and the new company free from the responsibility of Objector's royalties, the responsibility of its own shareholders and the unsecured creditors of the Debtor. The new buyer and Debtor insiders will then finish the development of the technology with Shell Oil Company, its joint venture partner. Objectors would state that the process being proposed by the Debtor serves the interests of the insiders of the Debtor and the interests of the friendly buyer, with the interests of all others who have made this technology possible being ignored. This is a breach of fiduciary responsibilities owed by the insiders to protect the Debtor's shareholders, its royalty holders, and its creditors.

8.      A Chapter 11 Reorganization is designed to reorganize a debtor for the benefit of its creditors, stockholders and other parties in interest. A sale of assets pursuant to Section 363 does not reorganize and there must be a sufficient business justification for such a sale. One factor looked at is the proportionate value of the asset to the estate as a whole. Here we are talking about all assets. Another factor is the elapsed time since the filing. This case was filed less than three months ago seeking a sale to be consummated, ironically only a few weeks before the next field test of the technology. Another factor is the likelihood that a plan of reorganization could be proposed. There

are many plans of reorganization that could be proposed allowing the Debtor to stay in business until after the anticipated field test in August, thus benefiting all creditors, stockholders, and other parties in interest alike. The process the Debtor has elected to pursue benefits only its chosen friendly buyer and the insiders in the corporation to the detriment of all others.

       9.      Debtor and friendly Buyer have proposed this Plan of Reorganization in collusion with each other and have calculated these facts:

       a.  There is no way any entity can possibly conduct the due diligence necessary on this complex drilling technology in time to bid on the auction sale under these expedited time lines. Therefore, the only bidder at the sale will be the friendly "stalking horse" buyer. Creditors, however, will be led to believe that there is a chance of getting multiple bidders at the auction and their claims will be paid, and will naively vote for acceptance of the Plan.

       b.  When the Debtor shows up two days after the auction at the hearing on the confirmation of the plan of reorganization and announces there were no additional bidders and tenders the $200,000 bid of the friendly Buyer (before trustee's fees and expenses and other administrative claims), it will be too late for creditors to vote negatively on the plan.

       c.  In anticipation that the Plan might not get approved, the DIP financing by the friendly Buyer has been set to come due September 1, a mere 6 days after confirmation. Therefore, if the plan is not approved, the friendly Buyer will foreclose on its lien and the Debtor and the Buyer accomplish outside of Bankruptcy Court what they couldn't accomplish inside.

10.    A plan of reorganization can be proposed and confirmed that will be fair and equitable to all parties.

11.    Objectors would state that the Plan of Reorganization in this case has not been proposed in good faith, that the requirements of 11 U.S.C. Section 1129 have not been met, and that the Plan should not be confirmed by this Court.

Respectfully submitted, this the 21st day of August, 2009.

PSI DISTRIBUTION, INCORPORATED,
PRODRIL SERVICES INTERNATIONAL LIMITED,
AND GUARDIAN LLC DEFINED BENEFIT PLAN
AND TRUST

By: /s/ Michael D. Greer

MICHAEL D. GREER, ESQ.
GREER, RUSSELL, DENT & LEATHERS, PLLC
MISSISSIPPI BAR NO. 5002
POST OFFICE BOX 907
TUPELO, MS 38802
(662) 842-5345  PHONE
(662) 842-6870  FAX

F.G. JACK BOBO, ESQ.
MISSISSIPPI BAR NO. 3603
POST OFFICE  BOX 427
LYON, MS  38645
(662) 624-2425  PHONE
(662) 624-2420  FAX

- 5 -

## CERTIFICATE OF SERVICE

We certify that on August 21, 2009, a true and correct copy of the foregoing was filed electronically in compliance with local rules. As such, this document was served on all counsel who have consented to electronic service.

/s/ Michael D. Greer
F. G. JACK BOBO
MICHAEL D. GREER